*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

UNPUBLISHED
August 21, 2025
9:31 AM

Plaintiff-Appellee,

v

No. 369912
Mecosta Circuit Court
LC No. 2023-010687-FH

SHAWN RANDALL-CLIFFORD CUSHMAN,

Defendant-Appellant.

Before: FEENEY, P.J., and BORRELLO and LETICA, JJ.

PER CURIAM.

Defendant appeals as of right his jury convictions of aggravated assault, MCL 750.81a, and resisting or obstructing a police officer, MCL 750.81d(1). Defendant was sentenced as a fourth-offense habitual offender, MCL 769.12, to serve 806 days to 15 years in prison for the resisting and obstructing conviction and 81 days in jail for the misdemeanor aggravated assault conviction. We affirm.

## I. FACTUAL AND PROCEDURAL HISTORY

The victim lived with Rodney Quick and her two children. She invited defendant, his girlfriend, and their children over for dinner. Defendant's minor stepson, CE, asked the victim for condoms, and the victim told him to ask his father. The victim went to speak with defendant about this, and it escalated into an argument. Defendant began hitting the victim in the head. A struggle followed. The victim grabbed defendant by the shirt in an attempt to stop the blows. Defendant bit the victim on the hand.

The victim claimed that other adults were present for defendant's assault upon her but did not stop it. The victim attempted to wake Quick, but was unable. The victim struggled with calling 911 because she had been drinking alcohol, which violated the terms of her probation. Ultimately, she called 911, but defendant took the phone from her and made statements accusing her of using methamphetamine, having a knife, and hitting defendant's stepson. At some point, the victim left the house and either fell, or was pushed, into a creek.

-1-

The police investigated the altercation and arrested defendant. Defendant attempted to run into the house after being told that he was under arrest. The officers grabbed defendant, and he attempted to pull himself away from the officers and drop his weight. An officer had to deploy a taser on defendant and the officers had to wrestle defendant to the ground to handcuff him. The officers also had to carry defendant to the police vehicle while defendant kicked them and attempted to prevent them from closing the car door.

A jury found defendant guilty as charged. This appeal followed.

## II. ANALYSIS

## A. EVIDENTIARY ISSUE

Defendant first argues that the court erred when it did not permit him to present evidence of a sexual relationship between the victim and his stepson, CE. We disagree.

This Court reviews a trial court's decision whether evidence is admissible for an abuse of discretion. *People v Duenaz*, 306 Mich App 85, 90; 854 NW2d 531 (2014). "An abuse of discretion occurs when trial court's decision is outside the range of principled outcomes." *Id.*

"The right to offer the testimony of witnesses, and to compel their attendance, if necessary, is in plain terms the right to present a defense, the right to present the defendant's version of the facts as well as the prosecution's to the jury so it may decide where the truth lies." *Washington v Texas*, 388 US 14, 19; 87 S Ct 1920; 18 L Ed 2d 1019 (1967). However, the right to present a defense is not absolute; "[t]he defendant must still comply with established rules of procedure and evidence designed to assure both fairness and reliability in the ascertainment of guilt and innocence." *People v Solloway*, 316 Mich App 174, 198; 891 NW2d 255 (2016) (quotation marks and citation omitted). MRE 401 provides:

Evidence is relevant if:

(a) it has any tendency to make a fact more or less probable than it would be without the evidence; and

(b) the fact is of consequence in determining the action.

Relevant evidence is admissible, but irrelevant evidence is not admissible. MRE 402. Relevant evidence may be excluded if its probative value is substantially outweighed by unfair prejudice. MRE 403. Evidence of a victim's sexual conduct is typically irrelevant and can "carry a danger of unfairly prejudicing and misleading the jury." See *People v Hackett*, 421 Mich 338, 345-346; 365 NW2d 120 (1984). The determination of admissibility of the victim's sexual conduct is within the trial court's discretion, and generally should always favor exclusion provided it does not constitutionally abridge the defendant's right to confrontation. *Id.* at 349.

Defendant sought to admit evidence that his stepson, CE, had a sexual relationship with the victim and that CE's sexual relationship with someone else caused the victim to go into a rage, leading to a fight between the victim and CE. The trial court determined that this testimony was irrelevant and refused to allow questions about this purported sexual relationship. Given the highly

prejudicial and potentially misleading nature of evidence regarding sexual conduct, the trial court did not abuse its discretion. *Id*. The evidence would also have had little bearing on whether defendant assaulted the victim. Furthermore, CE was permitted to testify that the victim assaulted and kicked him and that the victim had been drinking. The trial court therefore did not abuse its discretion by not permitting testimony about an alleged sexual relationship between CE and the victim.

## B. SELF-DEFENSE INSTRUCTION

Defendant next alleges that the trial court erred by failing to instruct the jury on self-defense or defense of others. We disagree.

Claims of instructional error involving questions of law receive de novo review, "[b]ut a trial court's determination whether a jury instruction is applicable to the facts of the case is reviewed for an abuse of discretion." *People v Gillis*, 474 Mich 105, 113; 712 NW2d 419 (2006) (quotation marks and citation omitted). "An abuse of discretion occurs when trial court's decision is outside the range of principled outcomes." *Duenaz*, 306 Mich App at 90. A defendant who presents a claim of instructional error on appeal must also establish that the failure to provide the requested instruction resulted in a miscarriage of justice. *People v Hawthorne*, 474 Mich 174, 182; 713 NW2d 724 (2006); see also MCL 769.26 ("No judgment or verdict shall be set aside or reversed or a new trial be granted by any court of this state in any criminal case, on the ground of misdirection of the jury . . . unless in the opinion of the court, after an examination of the entire cause, it shall affirmatively appear that the error complained of has resulted in a miscarriage of justice.").

"A criminal defendant is entitled to have a properly instructed jury consider the evidence against him." *People v Riddle*, 467 Mich 116, 124; 649 NW2d 30 (2002) (citations omitted). "Jury instructions must include all the elements of the charged offense, and must not exclude material issues, defenses, or theories if the evidence supports them." *People v Kosik*, 303 Mich App 146, 155; 841 NW2d 906 (2013). However, "[a] defendant asserting an affirmative defense must produce some evidence on all elements of the defense before the trial court is required to instruct the jury regarding the affirmative defense." *People v Guajardo*, 300 Mich App 26, 35; 832 NW2d 409 (2013). A defendant may present inconsistent defenses, but "all defenses must be supported by evidence." *Id*. at 43.

Self-defense and defense of others are both affirmative defenses. *People v Leffew*, 508 Mich 625, 641; 975 NW2d 896 (2022). "A defendant who argues self-defense implies his actions were intentional but that the circumstances justified his actions." *People v Wilson*, 194 Mich App 599, 602; 487 NW2d 822 (1992). MCL 780.972(2), of the Self-Defense Act, provides:

> An individual who has not or is not engaged in the commission of a crime at the time he or she uses force other than deadly force may use force other than deadly force against another individual anywhere he or she has the legal right to be with no duty to retreat if he or she honestly and reasonably believes that the use of that force is necessary to defend himself or herself or another individual from the imminent unlawful use of force by another individual.

The trial court denied a self-defense or defense of others instruction because defendant repeatedly told police that he did not touch the victim and because defendant's stepson testified that he was responsible for the victim's injuries. Defendant contends that there was sufficient evidence to warrant a self-defense or defense of others instruction because he was heard on a 911 call indicating that someone struck his son. That statement is insufficient to demonstrate that defendant witnessed an assaultive event between the victim and his stepson or otherwise acquired an honest and reasonable belief that the use of force was necessary to protect his stepson. In light of the record evidence, we cannot conclude that the trial court abused its discretion in denying defendant's request for a self-defense or defense of others instruction. *Gillis*, 474 Mich at 113.[1]

## C. ALLEGED PROSECUTORIAL MISCONDUCT[2]

Defendant asserts that the prosecutor engaged in misconduct at several points in the trial. We disagree.

This Court reviews "de novo claims of prosecutorial misconduct to determine whether [a] defendant was denied a fair and impartial trial." *People v Loew*, 340 Mich App 100, 125; 985 NW2d 255 (2022) (quotation marks and citation omitted). But, because defendant did not object below, his claims are subject to plain error review. See *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999). "To avoid forfeiture under the plain error rule, three requirements must be met: 1) error must have occurred, 2) the error was plain, i.e., clear or obvious, 3) and the plain error affected substantial rights." *Id*. "Reversal is warranted only when the plain, forfeited error resulted in the conviction of an actually innocent defendant or when an error seriously affected the fairness, integrity or public reputation of judicial proceedings independent of the defendant's innocence." *Id*. (quotation marks and citation omitted).

---

[1] According to defendant, he was entitled to a self-defense or defense of others instruction because he reported that "someone" struck his "son." This statement was insufficient to demonstrate that defendant took action in the defense of others, warranting an instruction. Although not cited by defendant, we note that witness Kyle Randall testified that the victim had a history of drinking alcohol to excess and physically assaulting defendant. On this evening, Randall testified that the victim pushed defendant, grabbed him by his shirt, and punched him. But, according to Randall, defendant then "turned around and walked inside the house." Later that evening, the victim pushed defendant, and defendant simply "shoved her out the door and then shut it." Randall indicated that the victim caused her own injuries by "bashing on the door," leaving her blood all over it. Randall did not testify that defendant physically struck and bit the victim in an act of self-defense or defense of others. And, Randall's testimony indicated that defendant took evasive action with the victim, not that he acted in self-defense or defense of others. Moreover, although we requested the video and audio recordings admitted at trial, they were not provided.

[2] This Court has explained that prosecutorial misconduct is a term reserved for "those extreme—and thankfully rare—instances where a prosecutor's conduct violates the rules of professional conduct or constitutes illegal conduct." *People v Cooper*, 309 Mich App 74, 87-88; 867 NW2d 452 (2015). When the conduct of a prosecutor does not warrant discipline, but instead constitutes "a technical or inadvertent error at trial," the claim is that of prosecutorial error. *Id.* at 88.

"The test of prosecutorial misconduct is whether the defendant was denied a fair and impartial trial." *People v Brown*, 294 Mich App 377, 382; 811 NW2d 531 (2011). "Prosecutorial misconduct issues are decided on a case-by-case basis, and the reviewing court must examine the record and evaluate a prosecutor's remarks in context." *Id*. at 382-383. "A prosecutor's good-faith effort to admit evidence does not constitute misconduct." *People v Dobek*, 274 Mich App 58, 70; 732 NW2d 546 (2007). Moreover, a "prosecutor need not speak in the blandest of all possible terms." *People v Blevins*, 314 Mich App 339, 355; 886 NW2d 456 (2016) (quotation marks and citation omitted). But, a prosecutor may not vouch for a witness's credibility to the effect that the prosecutor has special knowledge of the witness's truthfulness. *People v Bahoda*, 448 Mich 261, 276; 531 NW2d 659 (1995). Nor may a prosecutor appeal to the jury by asking it to sympathize with the victim. *People v Unger*, 278 Mich App 210, 237; 749 NW2d 272 (2008).

Defendant first argues that the prosecutor erred by asking the victim questions to elicit juror sympathy and by responding to defendant's objections in a disparaging manner. In response to the prosecutor's questions, the victim gave lengthy narrative answers. While examining the victim, the prosecution asked her how she was feeling about coming to court. The victim stated that she was "[u]ncomfortable," and, before she completed her answer, defense counsel interjected and objected on relevancy grounds. The victim then continued, explaining that her daughter had seen her face. The court halted the questioning and asked defense counsel what her objection was. Defense counsel answered that it was "[i]rrelevant." To which, the prosecutor responded, "I don't know how you could possibly determine that already. I don't even know how to respond to that." Defense counsel then explained that how the victim felt today had "nothing to do with what happened that specific evening." The court did not sustain the objection, stating:

> I understand. I'm going to give her some leeway because I think that it helps
> determine the credibility of her testimony for today. How she is feeling about being
> in the courtroom. So I'm going to give the prosecutor some leeway in regards to
> finding out – so that they can assess her credibility.

As the court noted, "asking witnesses about how they are feeling while testifying can be relevant to their credibility." *People v Bailey*, 310 Mich App 703, 722; 873 NW2d 855 (2015). The prosecution therefore did not engage in misconduct by posing this question to the victim. Further, defense counsel responded to the prosecutor's statement that she did not know how to respond to defense counsel's objection with a with a detailed explanation and the court provided its reasons for allowing a bit of leeway. There was no misconduct.

Thereafter, the victim testified that she was nervous, but then not nervous as she was there to show her daughter that it was "not okay for a man to beat you." The victim continued, stating that even if her daughter had not seen defendant hitting her, her daughter had seen her "face gushing . . . blood" and "her crying and begging for help." Defense counsel again objected that the victim's answer was irrelevant. The court asked for the prosecutor's response, which included that the victim was describing her emotions "[a]nd I think she's here for a reason. She's here for the benefit of her children and she's feeling empowered. It's how she's feeling in the moment and she's describing why." The trial court determined that the victim's testimony was relevant. To the extent that defendant argues that the prosecutor committed misconduct by her response to the judge's question, we conclude that she merely summarized the victim's testimony. In any event,

the trial court's final instructions that the jury was to decide the case based on the evidence, not sympathy, which the jury is presumed to have followed, cured any error. *Id*. at 721-722.

After the trial court overruled defendant's objection, the prosecutor said "sorry" to the victim, and the victim continued her testimony, citing her need to be an example for her daughter. Defendant contends that it was prosecutorial misconduct for the prosecutor to briefly apologize to the victim after the objection that was overruled. In context, this statement does not appear to have been intended to, or even likely to, elicit sympathy for the victim from the jury. Rather, it appears to be an apology for the interruption of the objection. Additionally, even if the apology and answer did elicit some juror sympathy, its brevity makes it unlikely to have deflected juror attention from the evidence in the case and the trial court's instructions cured any error. See *Id*.; *Unger*, 278 Mich App at 237.

Defendant next posits that the trial court and the prosecutor erred by allowing the victim to give a long narrative in response to the prosecutor's question about whether the victim was close to the defendant before the offense. Specifically, the victim discussed her friendship with defendant, that she had never been "man-handled the way he [had] man-handled [her] that night," that other adults at the house should have stopped defendant, that what defendant had done was unacceptable given the condition of her face, and that defendant needed to go to rehabilitation. Defendant has provided no authority for the proposition that the trial judge or the prosecution erred by allowing this lengthy testimony or that it was prejudicial. "[A]n appellant may not simply "announce a position or assert an error and then leave it up to this Court to discover and rationalize the basis for his claims, or unravel and elaborate for him his arguments, and then search for authority either to sustain or reject his position." *People v Bowling*, 299 Mich App 552, 559-560; 830 NW2d 800 (2013). Accordingly, defendant has not shown prosecutorial misconduct.

Defendant next claims that the prosecutor engaged in misconduct by asking the victim leading questions, interjecting that the victim "still has a right to present her story as a victim," and asking whether the victim needed a minute because the case was "stressful especially with the interruptions."[3] However, the trial court stated that it had asked the prosecutor to address the victim with leading questions because of the victim's lengthy responses to questions that included unnecessary information. Leading questions may be used on direct examination "as necessary to develop a witness's testimony." See MRE 611(d)(1). This was not misconduct. Further, the prosecutor's statement that the victim still had a right to present her story was in response to defense counsel's request that the court "limit [the victim's testimony] to the yes or no answers instead of ten other events being testified on over one question[.]" In context, this statement was not misconduct. Further, the prosecutor's remark about testifying being "stressful especially with the interruptions" came after a mid-sentence objection to the victim's testimony and the ensuing

---

[3] Indeed, defense counsel initially objected to the victim's testimony as being "narrative." Then, after the trial court permitted the prosecutor to lead the victim in her questioning, defense counsel objected to the leading questions. Defendant's contention that the questioning constituted prosecutorial misconduct ignores the court's responsibility to "exercise reasonable control over the mode and order of examining witnesses" to effectively determine the truth, prevent the waste of time, and to protect witnesses from harassment or undue embarrassment. See MRE 611.

arguments that followed. In context, this statement was brief enough to not risk eliciting juror sympathy, and therefore, was not misconduct.

Defendant next argues that one of the prosecution's objections was "demeaning" and constituted a "belittling of counsel" that "unfairly prejudiced the jury." Specifically, defense counsel questioned the victim whether she was upset with defendant because drugs were flipped off a table. The prosecutor objected to the question, arguing:

> These facts * * * aren't even in evidence. * * * I don't know if they'll ever be in evidence. This is the first I've ever heard of any of this. It's almost like [defense counsel's] testifying through questions. Facts that aren't in evidence nor will they likely be. I mean, the question patterns are so outrageous it's giving the impression of the evening of something it wasn't.

The court likewise expressed its concern, noting that the jury instructions stated that the lawyers' questions were not evidence. The court then asked defense counsel to restate the question. When counsel did so, the court asked why it would be relevant. Defense counsel responded that it could show why the victim was angry, that the victim "may have been the initial aggressor," and that the victim had "a motive to fabricate things." The prosecutor responded that no drugs were found, that drugs were not mentioned during the 911 call, that the police did not report that drugs were found, that "this [was] just getting far afield[,] . . . and [] confusing the issues." The attorneys disputed whether the police had entered the home before the trial court judge ruled that she "believe[d] that [the victim had] answered no."[4] Consequently, defense counsel was stuck with that answer.

On appeal, defendant contends that the prosecutor's comments that defense counsel was "almost testifying" and that her "question patterns [were] outrageous" were "belittling" and unfairly prejudiced the jury. But, no evidence had been introduced that there were drugs in the home beyond alcohol and defendant does not present authority that this type of objection is prosecutorial misconduct. See *Bowling*, 299 Mich App at 559-560. In any event, a "prosecutor need not speak in the blandest of all possible terms." *Blevins*, 314 Mich App at 355. And the trial court's instructions that "[t]he lawyers' statements and arguments and any commentary are not evidence," was sufficient to cure any error. *Bailey*, 310 Mich App 721-722.

Likewise, the prosecutor's response to defendant's objection to the victim's medical records was not misconduct either. Defendant objected to the admission of the victim's medical records because it was unclear whether the release for the records was valid. The prosecutor responded that the release was still valid and further stated, "it's just to confuse the issue because they don't want this particular document coming in." "A prosecutor may not suggest that defense counsel is intentionally attempting to mislead the jury." *People v Watson*, 245 Mich App 572, 592; 629 NW2d 411 (2001). Yet, a "prosecutor's comments must be considered in light of defense counsel's comments," and "[a]n otherwise improper remark may not rise to an error requiring reversal when the prosecutor is responding to the defense counsel's argument." *People v Watson*,

---

[4] Despite the prosecutor's objection, the victim testified that she did not "even remember any" and adding "[w]e were all drinking."

245 Mich App 572, 592-593; 629 NW2d 411 (2001) (quotations marks and citations omitted).  In context, the prosecutor's full response was responsive to the objection and noted that the matter was an issue for the court, not the jury.  And, in any event, the trial court's instructions cured any error.  *Bailey*, 310 Mich App at 721-722.

Defendant next claims that the prosecutor engaged in misconduct by stating: "We're also trying to conserve the court's and everybody else's time" in response to an objection addressing how an officer's memory should be refreshed.  Contrary to defendant's assertion, this response does not appear to be a statement disparaging the defense for wasting the jury's time, but to question whether the procedure was necessary because the exhibits were previously admitted into evidence.  This claim of misconduct did not deprive defendant of a fair and impartial trial.  See *Brown*, 294 Mich App at 382-383.

Defendant contends that the prosecutor engaged in misconduct by allowing one of the officers to testify about previous negative encounters with defendant.  In response to the prosecutor's question, the officer testified that he "had been to the house before" and "dealt with" defendant previously.  Defense counsel objected, referencing "[p]otential 404b issues."  The court overruled the objection because the limited testimony without additional information served to explain why the officers made the investigative choices they did.  Police officers may explain "the steps of their investigations from their personal perceptions."  *People v Heft*, 299 Mich App 69, 83; 829 NW2d 266 (2012).  Thus, the prosecutor did not engage in misconduct by eliciting testimony about the officers' investigative steps.  See *Dobek*, 274 Mich App at 70.

Defendant further claims that it was misconduct for the prosecutor to ask the officers whether they believed defendant was being dishonest.  Defendant relies on *People v Ackerman*, 257 Mich App 434, 449; 669 NW2d 818 (2003) ("A prosecutor may not ask a defendant to comment on the credibility of prosecution witnesses because a defendant's opinion of their credibility is not probative.").  Our review of the record reflects that the police witnesses were not asked to comment on defendant's credibility.  Rather, the officers were asked about the inconsistency in statements made by witnesses.  Consequently, this claim of error is not supported by the record.

In sum, defendant has not established that he is entitled to relief or that he denied a fair trial.

## D.  INEFFECTIVE ASSISTANCE OF COUNSEL

Defendant next asserts that trial counsel was ineffective for failing to object to the many instances of alleged prosecutorial misconduct.  However, counsel is not ineffective for failing to make a meritless argument or raise a futile objection.  *People v Isrow*, 339 Mich App 522, 532; 984 NW2d 528 (2021).  As just discussed, defendant has failed to show that the prosecution engaged in misconduct.  Because there was no prosecutorial misconduct, defense counsel cannot be deemed ineffective for failure to object to the purported misconduct.  See *id*.  And, even if defendant had done so, he has not met his burden of showing that counsel performed deficiently.  See *Unger*, 278 Mich App at 242 ("[D]eclining to raise objections . . . can often be consistent with sound trial strategy.")  Nor has defendant met his burden of establishing that he was prejudiced in

light of the trial court's jury curative instructions, which the jury is presumed to have followed. *Id*. at 235.

## E. REQUESTED ADJOURNMENTS

Defendant next argues that the trial court abused its discretion by denying his motion for an adjournment, or continuance, to procure the testimony of three witnesses. We disagree.

This Court reviews a trial court's decision whether to grant a motion for an adjournment for an abuse of discretion. *People v Daniels*, 311 Mich App 257, 264-265; 874 NW2d 732 (2015). "An abuse of discretion occurs when the trial court's decision is outside the range of principled outcomes." *Id*. at 265.

"A criminal defendant has a state and federal constitutional right to present a defense, which includes the right to call witnesses, but this right is not absolute." *Id*. "A defendant must comply with established rules of procedure and evidence designed to assure both fairness and reliability in the ascertainment of guilt and innocence." *Id*. (quotation marks and citation omitted). MCR 2.503 provides the procedure for granting an adjournment to secure witness testimony:

(B) Motion or Stipulation for Adjournment.

(1) Unless the court allows otherwise, a request for an adjournment must be by motion or stipulation made in writing or orally in open court based on good cause.

\* \* \*

C) Absence of Witness or Evidence.

(1) A motion to adjourn a proceeding because of the unavailability of a witness or evidence must be made as soon as possible after ascertaining the facts.

(2) An adjournment may be granted on the ground of unavailability of a witness or evidence only if the court finds that the evidence is material and that diligent efforts have been made to produce the witness or evidence.

Factors the court uses to determine if there is good cause for an adjournment "include whether defendant (1) asserted a constitutional right, (2) had a legitimate reason for asserting the right, (3) had been negligent, and (4) had requested previous adjournments." *Daniels*, 311 Mich App at 266 (quotation marks and citation omitted). "Even with good cause and due diligence, the trial court's denial of a request for an adjournment . . . is not grounds for reversal unless the defendant demonstrates prejudice as a result of the abuse of discretion." *Id*. (alteration in original).

The first witness that defendant requested an adjournment for had been incarcerated for "quite some time" before the trial.[5] Nothing in the record shows that defense counsel would have

---

[5] The witness was facing criminal charges arising from his actions after the police responded to the victim's 911 call and his attorney was out of the country.

been unable to contact this witness's attorney to make arrangements for the witness' testimony before trial. In other words, the record demonstrates that defense counsel did not exercise diligence in procuring this witness. Consequently, defendant has not shown that the trial court abused its discretion by denying the adjournment. See MCR 2.503(C)(2).

The trial court also did not abuse its discretion by denying an adjournment to procure two witnesses who provided written statements. Defense counsel stated that she had forwarded three witness statements to the prosecution, including the two in question, which claimed that the police failed to fully investigate the case. She also stated that she did not attempt to subpoena these two witnesses until two weeks before trial because the trial date had not been set until then. At that point, defense counsel was unable to locate them. The trial court denied the request for an adjournment to procure these witnesses because defense counsel failed to ask the prosecution to help locate them until the second day of the trial. This was proper under MCR 2.503(C) because defense counsel could have moved to adjourn the trial once she was unable to serve these two witnesses. Defense counsel also could have requested assistance from the prosecution earlier, but failed to do so until the trial itself. Defense counsel, therefore, failed to make diligent efforts to secure the testimony of these witnesses. Under these circumstances, the trial court did not abuse its discretion when it denied defendant's request for an adjournment. See MCR 2.503(C)(2).

## F. SENTENCING

Defendant contends that he is entitled to resentencing because the trial court erred when it assessed 75 points for Prior Record Variable (PRV) 1, 5 points for Offense Variable (OV) 3, and 10 points for OV 9. Although we agree that the trial court improperly scored OV 3, defendant is not entitled to resentencing under our caselaw.

"A trial court's factual determinations [in scoring the PRVs and OVs] are reviewed for clear error and must be supported by a preponderance of the evidence." *People v Gloster*, 499 Mich 199, 204; 880 NW2d 776 (2016). "Whether the facts, as found, are adequate to satisfy the scoring conditions prescribed by statute, i.e., the application of the facts to the law, is a question of statutory interpretation, which an appellate court reviews de novo." *Id*. (quotation marks omitted).

At sentencing, defendant argued that OVs 3 and 9 were scored improperly, and, therefore, his arguments on appeal concerning those alleged scoring errors are preserved. But, defendant did not argue that PRV 1 was scored improperly and, therefore, this issue was not preserved for appellate review. Unpreserved issues are subject to plain error review. See *Carines*, 460 Mich at 763. "To avoid forfeiture under the plain error rule, three requirements must be met: 1) error must have occurred, 2) the error was plain, i.e., clear or obvious, 3) and the plain error affected substantial rights" *Id*. "Reversal is warranted only when the plain, forfeited error resulted in the conviction of an actually innocent defendant or when an error seriously affect[ed] the fairness, integrity or public reputation of judicial proceedings independent of the defendant's innocence." *Id*. at 763-764 (quotation marks omitted).

## 1. PRV 1

Defendant has a criminal history that includes five prior felonies. The sentencing court scores PRV 1 by determining the number of high-severity felony convictions a defendant has. MCL 777.51(1). If an "offender has 3 or more prior high severity felony convictions," then PRV 1 is scored at "75 points." MCL 777.51(1)(a).

On appeal, defendant does not challenge that he has the requisite number of high-severity felonies, but contends that the 10-year gap rule, MCL 777.50, precludes those convictions from being counted. MCL 777.50 reads:

> (1) In scoring prior record variables 1 to 5, do not use any conviction or juvenile adjudication that precedes a period of 10 or more years between the discharge date from a conviction or juvenile adjudication and the defendant's commission of the next offense resulting in a conviction or juvenile adjudication.

> (2) Apply subsection (1) by determining the time between the discharge date for the prior conviction or juvenile adjudication most recently preceding the commission date of the sentencing offense. If it is 10 or more years, do not use that prior conviction or juvenile adjudication and any earlier conviction or juvenile adjudication in scoring prior record variables. If it is less than 10 years, use that prior conviction or juvenile adjudication in scoring prior record variables and determine the time between the commission date of that prior conviction and the discharge date of the next earlier prior conviction or juvenile adjudication. If that period is 10 or more years, do not use that prior conviction or juvenile adjudication and any earlier conviction or juvenile adjudication in scoring prior record variables. If it is less than 10 years, use that prior conviction or juvenile adjudication in scoring prior record variables and repeat this determination for each remaining prior conviction or juvenile adjudication until a period of 10 or more years is found or no prior convictions or juvenile adjudications remain.

A conviction that is not scorable under the sentencing guidelines may still be considered when determining whether there has been a 10-year gap for the purpose of assessing PRV 1. See *People v Butler*, 315 Mich App 546, 547-548; 892 NW2d 6 (2016).

Defendant contends that the last discharge date for his last felony conviction was in 2010 and these offenses occurred in 2023. Defendant's argument, however, is without merit because he was convicted of a misdemeanor in 2016. *Id*. Therefore, there was not a 10-year gap between defendant's convictions that were used in scoring PRV 1. Accordingly, the trial court did not err in assessing 75 points for PRV 1.

## 2. OV 9

OV 9 is assessed based on the number of victims who were placed in danger of physical injury or death. MCL 777.39. If there were two to nine victims placed in such danger, OV 9 is properly assessed at 10 points. MCL 777.39(1)(c). "A person may be a victim under OV 9 even if he or she did not suffer actual harm; a close proximity to a physically threatening situation may

suffice to count the person as a victim." *People v Baskerville*, 333 Mich App 276, 294; 963 NW2d 620 (2020) (quotation marks and citation omitted).

The trial court assessed 10 points for OV 9 because multiple officers were involved in defendant's arrest. All the officers testified that defendant resisted arrest and had to be physically wrestled to the ground. The officer who deployed his taser testified that defendant was "pulling away from us, twisting, and not complying with our orders," requiring a "reasonable use of force." Another officer testified that defendant kicked him in the shoulder and arm and attempted to kick the other officers. This placed the arresting officers in close proximity to a physically threatening situation. See *Baskerville*, 333 Mich App at 294. And the sentencing court did not err in assessing 10 points for OV 9.

3. OV 3

OV 3 is assessed by determining if a victim was physically injured. MCL 777.33(1). If bodily injury not requiring medical treatment occurred to a victim, the sentencing court must assess five points. MCL 777.33(1)(e). "[T]he term 'bodily injury' encompasses anything that the victim would, under the circumstances, perceive as some unwanted physically damaging consequence." *People v Lampe*, 327 Mich App 104, 112-113; 933 NW2d 314 (2019) (quotation marks and citation omitted).

The trial court assessed 5 points for OV 3 because defendant kicked one of the arresting officers. On appeal, the parties agree that there was no evidence on the record that this officer actually sustained any physically damaging consequences. Therefore, the trial court erred in scoring OV 3 at 5 points, and it should have assessed 0 points.

Even so, "[w]here a scoring error does not alter the appropriate guidelines range, resentencing is not required." *People v Francisco*, 474 Mich 82, 89 n 8; 711 NW2d 44 (2006). In this case, defendant's sentencing offense was resisting and obstructing, MCL 750.81d(1), a Class G felony, MCL 777.16d. Defendant's total PRV score placed him in PRV Level F and his total OV score was 30 points, placing him in OV Level III. MCL 777.68. Without the five points assessed for OV 3, defendant's total OV score is 25 and he remains in OV Level III. *Id*. Accordingly, defendant is not entitled to resentencing. *Francisco*, 474 Mich at 89 n 8.

Affirmed.

/s/ Kathleen A. Feeney
/s/ Stephen L. Borrello
/s/ Anica Letica